UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:23-cv-00398

**Power Funding, Ltd., et al.,**
*Plaintiffs,*

v.

**Chabad Lubavitch of Sunrise Inc. et al.,**
*Defendants.*

### OPINION AND ORDER

Before the court is defendants' motion to dismiss for lack of personal jurisdiction and improper venue. Doc. 6. For the reasons below, defendants' motion is denied.

This case arises out of an alleged scheme to fabricate invoices for textile goods and sell the right to collect on those invoices to innocent third parties SSMD Financial, L.L.C. and servicing agent Power Funding, Ltd. (collectively "plaintiffs"). Plaintiffs allege that in 2014 they entered into a written agreement (the "Factoring Agreement") with Dreamtex, Inc., a Florida-based textile manufacturer. *Id.* at 17–18. When Dreamtex offered to sell an invoice receivable to plaintiffs, Power Funding would first conduct due diligence. That due diligence included (1) verifying the customer's credit profile and (2) conferring with the customer through email and phone to verify the invoice amount and receipt of the goods. *Id.* Thereafter, Power Funding would pay Dreamtex a percentage of the invoice amount, thus allowing Dreamtex immediate access to cash. *Id.* at 18. Customers to those invoice receivables were then to pay plaintiffs, instead of Dreamtex.

At some point before 2021, Dreamtex allegedly began creating false invoices. *Id.* at 19. Plaintiffs allege that Dreamtex officers Evan Young and Ivan Felsen recruited the current defendants, Chabad Lubavitch of Sunrise, Inc., The Synagogue of Inverrary-Chabad, Inc. (d/b/a Camp Gan Israel Greater Ft. Lauderdale), Chabad of Greater Fort Lauderdale, Inc. (d/b/a Chabad Global

Thrift), Chabad of Sunrise at Sawgrass, Inc., Aron Y. Lieberman, Levi Yitzchok Chanowitz, Esther Chanowitz, Joseph Lebovics (collectively "defendants") as co-conspirators in the fraud. *Id.* Specifically, plaintiffs allege that Young would send a false invoice to defendants and tell them to "expect a 'confirmation call' or 'email' from Power Funding." *Id.* at 19. Then, when contacted by Power Funding, defendants would "misrepresent[] to Power Funding that the underlying goods were received," and that "the goods met the Defendant's expectations . . . ." *Id.* at 19–20; *see id.* at 24, 33–36. The scheme was kept afloat in a process called invoice "kiting" or "cycling": By the time a sold false invoice became due, Dreamtex had sold other false invoices to Power Funding, and used the new funding to pay defendants the invoice amount plus a commission. Defendants would then send Power Funding a check or wire payment, thus satisfying the invoice receivable debt. *Id.* at 20–21.

But, in 2022, Dreamtex allegedly was unable to "cycle" enough false invoices to keep the operation afloat, so invoices were left unpaid. *Id.* at 21–22. In September 2022, plaintiffs sued Dreamtex, Young, and Felson for fraud in the 241st Judicial District Court, Smith County, Texas, obtaining a default judgment (the "Dreamtex Lawsuit"). *Id.* at 25, 41–47. Dreamtex and Young admitted to the fraud, and the judgment was supported by an Agreed Statement of Facts in Support of Judgment. *Id.* at 22, 25, 41–47. Plaintiffs allege that, in the Dreamtex Lawsuit, "the Court specifically found that its ruling did not impair the rights, claims or causes of action of either Plaintiff against any other potentially responsible party . . . ." *Id.* at 25.

Unable to collect on the state-court judgment from the Dreamtex parties, plaintiffs filed this action alleging (1) that defendants are jointly and severally liable for the invoices in a suit on accounts cause of action; (2) unjust enrichment; (3) fraud; (4) conversion; and (5) violations of the Texas Theft Liability Act. *Id.* at 28–29. Plaintiffs seek $1,277,697.90 in unpaid invoices as well as interest on the invoices, exemplary damages, and

attorney's fees. *Id.* at 30–31. Defendants timely removed the case to this court. *See* Doc. 1 at 2. On September 5, 2023, defendants filed the current motion, arguing that the court lacks personal jurisdiction over all defendants and that venue is improper under 28 U.S.C. § 1406(a). Doc. 6.

Subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) is properly alleged. Plaintiffs are citizens of Texas. Doc. 19 at 3. Defendants are citizens of Florida. *Id.* at 2–3. And the amount in controversy exceeds $75,000. *See* Doc. 1 at 2.

## Personal Jurisdiction

Federal courts sitting in diversity may assert personal jurisdiction "if (1) the state's long-arm statute allows it; and (2) exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). Texas's long-arm statute authorizes jurisdiction to the full extent allowed by the Due Process Clause of the Fourteenth Amendment. *Id.* So the question whether a defendant is subject to this court's jurisdiction depends exclusively on the due-process principles first established in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

Personal jurisdiction comes in two forms, "general" and "specific." Plaintiffs do not argue the court has general personal jurisdiction over defendants. Doc. 9 at 19. Specific jurisdiction, in contrast, arises from "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). In determining whether the exercise of specific jurisdiction is proper, the Fifth Circuit considers three factors:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Inmar Rx Sols., Inc. v. Devos, Ltd.*, 786 F. App'x 445, 448 (5th Cir. 2019). Once a plaintiff shows that the first two factors are satisfied, the burden shifts to the defendant to show that the exercise of jurisdiction would be unfair and unreasonable. *Id.*

Defendants deny that they were involved in the alleged Dreamtex fraud. *See, e.g.*, Doc. 6-2 at 2–4 (Declaration by Joseph Lebovics). They claim that Young never revealed that the invoices were false and that "Young misrepresented . . . how the monetary structure would work." *Id.* In their motion here, defendants argue that the court lacks personal jurisdiction because they have never conducted business in, traveled to, held bank accounts in, or based employees out of Texas. *See* Doc. 6 at 7–8. And—contrary to what plaintiffs claim—defendants argue that they never received money from Power Funding. *See, e.g.*, Doc. 6-2 at 4.

Defendants also argue that any contacts sufficient to establish personal jurisdiction were created by Young, and defendants cite *Walden v. Fiore* for the proposition that minimum contacts with the forum state must arise from contacts the defendant himself creates. 571 U.S. 277, 284 (2014); Doc. 6 at 9, 14. And, absent Young's contacts, defendants argue, "Plaintiffs' only support for jurisdiction is that the Defendants may have communicated by mail, e-mail and telephone with Plaintiffs, Texas entities, and sent and received money to a bank located in Texas." Doc. 6 at 9.

Defendants assert that Fifth Circuit precedent "has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004); *see also Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) (defendant's telephone calls and wire transfers to Texas regarding a contract negotiated with Texas plaintiff were insufficient to support specific personal jurisdiction

over New York defendant where material performance of the contract occurred in Mexico); *United My Funds, LLC v. Perera*, 2020 WL 674364, at *4 (E.D. Tex. Feb. 11, 2020) ("[R]eceiving a wire transfer, even if the wire transfer came from Texas is not sufficient to establish minimum contracts without more.").

Plaintiffs characterize the events differently. Plaintiffs allege that the scheme was pervasive, took place over many years, and involved "millions of dollars of Power Funding's money" passing through defendants' bank accounts and that Power Funding's money is property with a *situs* in Texas. Doc. 9 at 5. They argue that defendants made additional contacts to the forum by virtue of check and wire payments and through misrepresentations over phone and email. *Id.* Finally they argue that, because defendants received a 3% commission for floating the invoices, their actions are "inextricably intertwined" with Young's, and that both parties' purposeful actions (separately or together) constitute the "minimum contacts" needed for specific jurisdiction. *Id.*

What alleged contacts with Texas may the court consider in analyzing personal jurisdiction? Because an evidentiary hearing on the motion to dismiss was not conducted (or requested), "the party seeking to assert jurisdiction is required only to present sufficient facts to make out a prima facie case supporting jurisdiction." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). Facts presented through affidavits and exhibits may be considered alongside the well-pleaded allegations in the complaint. *Simon v. United States*, 644 F.2d 490, 497 (5th Cir. 1981). If a plaintiff's prima facie case for personal jurisdiction is not born out after discovery and further fact-finding, the case will be dismissed at that point for lack of personal jurisdiction.

Here, defendants do not dispute that they paid Power Funding by mailing checks and sending wire payments to Texas. Doc. 10 at 10. Defendants do not dispute that phone calls were made as part of Power Funding's invoice-due-diligence process, but defendants argue that the calls were initiated by Power Funding to defendants in Florida. *Id.* Third, because defendants argue that

"Young misrepresented to [defendants] how the monetary structure would work," the parties appear to dispute whether defendants were making *misrepresentations* in the due-diligence communications with Power Funding. Finally, the parties dispute whether Power Funding paid defendants. Doc. 1-1 at 16; Doc. 6-2 at 4.

Even if Power Funding did not send payments out of Texas to defendants, defendants' checks, wire payments, and factual representations through phone and email constitute sufficient minimum contacts with this forum. The cases that defendants rely on to argue that wire payments and phone calls are not sufficient minimum contacts are inapposite, for those cases are breach-of-contract cases. *See Patterson v. Dietze, Inc.*, 764 F.2d at 1147. Here, in contrast, part of plaintiffs' claims allege an intentional tort. "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). In *Trois v. Apple Tree Auction Center*, the Fifth Circuit held that tortious misrepresentations made by phone call into a forum by a nonresident defendant was a sufficient contact to establish personal jurisdiction. 882 F.3d 485, 491 (5th Cir. 2018). Even if defendants did not initiate the due-diligence calls with Power Funding, plaintiffs' well-pleaded allegations are that defendants' representations on those phone calls give rise to a fraud claim. *See id.* (finding personal jurisdiction even where defendant did not initiate phone call into forum).

Plaintiffs' suit on account and unjust enrichment claims, however, sound in contract and equity. Had those claims been brought without the fraud claims, the court questions whether it would have specific jurisdiction over defendants. For example, plaintiff has not established that performance of any contractual obligations was "centered" in Texas. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). However, although the court might not have specific jurisdiction over those claims alone, pendent personal jurisdiction exists over defendants on those

remaining claims. *See Elevacity U.S., LLC v. Schweda*, 2022 WL 3704537, at *11 (E.D. Tex. Aug. 26, 2022) (exercising pendent personal jurisdiction).

Pendent personal jurisdiction allows a court with personal jurisdiction over a defendant as to one claim—the anchor claim—to exercise personal jurisdiction over other claims that arise out of the same nucleus of operative facts. *United States v. Botefuhr*, 309 F.3d 1263, 1272 (11th Cir. 2002) (citing 4A Charles Alan Wright et al., Federal Practice & Procedure § 1069.7 (3d ed. 2002)). If the pendent claims arise from the same operative facts as the anchor, the court makes a discretionary determination of "whether entertaining the pendent claims against the defendant promotes 'judicial economy, avoidance of piecemeal litigation[,] and the overall convenience of the parties.'" *Elevacity*, 2022 WL 3704537, at *11 (quoting *Canyon Furniture Co. v. Rueda Sanchez*, 2018 WL 6265041, at *13 (W.D. Tex. Nov. 8, 2018)).

Although the Fifth Circuit has not addressed pendent personal jurisdiction, district courts in this circuit have adopted it. *Elevacity*, 2022 WL 3704537, at *11 (collecting cases). As stated above, the contacts giving rise to intentional-tort claims permit the court to exercise personal jurisdiction over defendants. Defendants' actions and omissions that sustained the invoice kiting, and any unpaid invoices giving rise to the suit on accounts claim, arise out of the same operative facts as the intentional tort claims.

The court finds that trying the suit on account, unjust enrichment, and tort claims together would promote judicial economy, and that exercising jurisdiction over the defendants in all claims comports with "fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. Defendants are not being haled into Texas based on "random, fortuitous, or attenuated contacts." *Walden*, 571 U.S. at 286. Defendants are alleged to have repeatedly made contact with plaintiffs in this forum through phone and email representations, and through wire payments and checks. If those allegations are born out by the facts, defendants should have reasonably anticipated that they might be haled into a Texas court because of

that conduct. *See Trois*, 882 F.3d at 491. Accordingly, defendants' motion to dismiss under 12(b)(2) for lack of personal jurisdiction is denied.

## Venue

Defendants also move to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). Section 1406 requires dismissal or transfer of a case "laying venue in the wrong division or district." Defendants argue that, under the general venue statute—28 U.S.C. § 1391—venue is not proper in this district. Doc. 6 at 18. Plaintiffs argue that § 1391, being the general venue statute, is not the proper statute to use when determining whether venue is proper in a removed action. Doc. 9 at 29–30.

Plaintiffs are correct. "[O]n the question of venue, § 1391 has no application to . . . a removed action." *Polizzi v. Cowles Mags., Inc.*, 345 U.S. 663, 665–66 (1953). The venue of removed actions is instead governed by 28 U.S.C. § 1441(a). *Id.* "Section 1441(a) expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'" *Id.* (quoting 28 U.S.C. § 1441(a)). Plaintiffs commenced this suit in the 7th Judicial District Court of Smith County, Texas. Doc. 1-1 at 6. The Eastern District of Texas and the Tyler Division are the district and division embracing Smith County. *See* 28 U.S.C. § 124. Accordingly, defendants' motion to dismiss for improper venue is denied.

Because the defendants' motion to dismiss for lack of personal jurisdiction and improper venue is denied, the court denies defendants' motion for attorney fees under 28 U.S.C. § 1919.

*So ordered by the court on May 7, 2024.*

_____
J. CAMPBELL BARKER
United States District Judge